CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
AUG - 4 2011
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MICHAEL AKOS MORVA, | ) | Civil Action No. 7:09-cv-00515 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| SHERIFF OCTAVIA JOHNSON, et al., | ) | By: Hon. Jackson L. Kiser |
| Defendants. | ) | Senior United States District Judge |

Michael Akos Morva, a Virginia inmate proceeding pro se, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 with jurisdiction vested in 28 U.S.C. § 1343. Plaintiff names as defendants Sheriff Octavia Johnson and Roanoke City Jail ("Jail") correctional officers Sergeant Watkins, Deputy Young, Deputy Howard, and Deputy Cunningham. This matter is ripe for disposition after plaintiff amended his complaint, the defendants filed a motion for summary judgment, and plaintiff responded. After reviewing the record, I grant the defendants' motion for summary judgment.

I.

A.  PLAINTIFF'S ALLEGATIONS

Plaintiff alleges the following relevant facts in his complaint, amendments, and responses. Jail staff saw plaintiff hit the light fixture in his cell on December 22, 2007. About a half hour later at 2:00 p.m., defendants Watkins, Howard, and Cunningham with two other deputies escorted plaintiff in handcuffs to a restraint chair, located in a cell across from the Jail's intake-booking desk, as punishment. Plaintiff complied with an order to sit in the seat, despite the presence of another inmate's urine pool on it, and Watkins, Howard, and Cunningham applied the restraints to plaintiff's body. They stretched plaintiff's legs as far as possible and secured his ankles to the chair, which caused great pressure to the upper-backside of his legs.

Watkins raised the restraint chair's height so plaintiff's feet could not touch the floor. Plaintiff experienced severe pain as the pressure cut off blood circulation through his legs for the next nineteen hours.

At 6:00 p.m., defendant Young and two other deputies entered the cell. Plaintiff made a "smart comment" to him, and Young punched plaintiff in the stomach and in the face as he was restrained in the chair. Young and one of the other deputies took turns relentlessly punching plaintiff in the head, neck, and face for about three minutes while the third deputy watched. These deputies left the cell, but Young and the other assaulting deputy returned an hour later and punched him again several more times in the head, neck, and face for another three minutes. Young then grabbed plaintiff by his hair to scream at him while straining plaintiff's neck to the point plaintiff thought it would break. Plaintiff stiffened his neck in resistance, and Young punched plaintiff's face several more times until he released plaintiff's hair. Each deputy then punched plaintiff in the face about thirteen more times until they got tired and left the cell. Plaintiff denies trying to head-butt Young at any time.

Starting at 2:20 p.m., medical staff assessed plaintiff approximately every thirty minutes while he was in the chair, except for nine hours between 10:20 p.m. and 7:15 a.m. Plaintiff alleges he told the nurse about the beating at the 10:20 p.m. check, but the nurse allegedly did nothing.[1] Plaintiff admits "act[ing] out" by singing very loudly at the beginning of the night.

Plaintiff alleges that the deputies acted under the orders and authority of Sheriff Johnson and in retaliation for his brother killing two law enforcement officers in a neighboring county. Plaintiff asserts that the Jail employs a systematic practice of torture, and Johnson does not

---

[1]Three different nurses monitored plaintiff during their respective shifts while he was in the restraint chair.

permit inmates to file grievances or receive medical attention as means to cover up the torture. Plaintiff requested grievance forms, but Jail staff would not give them to him or they tore up the grievances in front of him. Plaintiff also complains that Cunningham and Howard threatened and ridiculed him.

Plaintiff believes the Jail could have used better alternatives to punish him for hitting his light fixture, like the loss of privileges, rather than painfully placing him in a restraint chair for nineteen hours. Plaintiff believes that the loss of circulation in his legs caused him an increased risk of blood clots that could have killed him. Plaintiff also alleges that he suffers as a result of the beating severe nightmares, head pain, eye pain, neck pain, loss of mobility and numbness in his extremities, lower-back damage, permanent eye damage, and bruises on his head, face, and eyes. Plaintiff requests as relief $3 million from Johnson and $500,000 from Watkins, Young, Howard, and Cunningham.

Plaintiff filed his mother's affidavit in support for his claims. She avers that Jail staff prevented her from visiting plaintiff on the day he was in the restraint chair and lied by telling her that plaintiff refused to see her. Plaintiff argues that staff lied to conceal the injuries he sustained from the beating. Plaintiff's mother also submitted an affidavit stating plaintiff suffered severe pain in his head, neck, and jaw since 2003 because of Temporomandibular joint ("TMJ") disorder, which is inflammation of the jaw.

B. DEFENDANTS' RESPONSES

The defendants allege the following facts in support of their motion for summary judgment. On December 22, 2007, Watkins ordered an inspection cleaning of the Jail's third floor, where plaintiff was housed. Two deputies were assigned to plaintiff's cell inspection

3

because of his prior conduct, including covering himself in feces, writing sexually suggestive letters to female staff, and prior threats of assault on staff.[2] During the inspection of plaintiff's cell, plaintiff took off his clothes and started insulting Jail staff.[3] After the cleaning crew left, plaintiff defecated through his cell door's food slot and threatened to spit feces on the prosecutor the next time he was taken to court. Howard reported plaintiff's behavior to Watkins, who ordered plaintiff moved to a different isolation cell to prevent plaintiff from assaulting staff. Howard and Cunningham aver that they did not have any further contact with plaintiff after plaintiff moved to the different cell.

While plaintiff was in his new cell, Howard saw plaintiff trying to damage his light fixture as means to have demands met. After considering plaintiff's behavior, Watkins ordered that plaintiff be placed in the restraint chair until plaintiff's actions and statements indicated that he no longer was a threat to security. Staff did not forcibly move plaintiff from his cell to the chair or to secure him in it.

The restraint chair rests on a base and can be on wheels or directly on the floor, and the inmate's position in the chair is not affected by the base being on wheels or the floor. Staff lowered the height of the chair to the floor because plaintiff tried to tilt the chair over, but the height of the chair did not affect plaintiff's position in the chair or the restraints. Jail staff constantly observed plaintiff for the nineteen hours he was in the chair. Plaintiff requested and received water while he was in the chair.

During his evening shift at the Jail's intake-booking desk, Young had a clear view of

---

[2] Plaintiff denies writing sexually suggestive letters and prior threats of assault on staff but does not deny covering himself in feces.

plaintiff in the restraint chair and did not see anyone strike plaintiff. At 7:15 p.m., Young approached plaintiff to remove him from the chair to escort him to a bathroom. However, plaintiff tried to head-butt Young as he removed the restraints, and Young left plaintiff in the chair until he calmed down enough to be safely escorted to a bathroom. Young denies striking plaintiff.

Watkins removed plaintiff from the restraint chair the next day at 8:45 a.m. after plaintiff agreed to comply with Jail rules. Watkins avers that plaintiff did not have any physical evidence of any injury and did not complain of any injury.

While plaintiff was in the chair between 2:00 p.m. on December 22nd and 8:45 a.m. on December 23rd, medical staff checked plaintiff's extremities approximately every thirty minutes, starting at 2:20 p.m. Nearly all of the medical checks noted in his medical record reflect his extremities being normal with no complaint from plaintiff. At 3:50 p.m. on December 22nd, a nurse recommended to a deputy that plaintiff's leg and hand restraints be repositioned. At 7:15 p.m., plaintiff complained of back pain. Medical staff did not observe plaintiff between 10:20 p.m. and 7:15 a.m. Thirty minutes before he was released from the chair, a nurse noted that plaintiff's hands appeared swollen and asked deputies to loosen his hand restraints.

Plaintiff filed a sick-call request on December 24, 2007, complaining of his stomach hurting for the prior three weeks. Plaintiff also complained about pain in his right eye and the back of his head from being hit by two deputies not parties to this action. Two days after his release from the restraint chair, plaintiff filed a Jail grievance claiming that two deputies, who are not defendants, hit him and caused eye and head pain.

---

[3] Plaintiff denies taking off his clothes and making lewd comments.

5

II.

A.  SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).[3] Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts admissible as evidence that demonstrate the existence of a genuine issue of fact for trial. Fed. R. Civ. P. 56(c); id. at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 248. Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute. Overstreet v. Ky.

---

[3]The parties received reasonable and explicit notice that the court may convert a motion to dismiss that references matters outside the pleadings into a motion for summary judgment when the Clerk issued a timely Roseboro notice. See Fed. R. Civ. P. 12(d); Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975).

Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991). A court may neither resolve disputed facts or weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility, Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). Furthermore, a party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995). Moreover, a plaintiff cannot rely on a response to a motion for summary judgment to act as an amendment to correct deficiencies in a complaint challenged by a defendant's motion for summary judgment. See Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."); Barclay White Skanska, Inc. v. Battelle Mem'l Inst., 262 F. App'x 556, 563 & n.16 (4th Cir. 2008) (No. 07-1084), available at 2008 WL 238562, at *6, 2008 U.S. App. LEXIS 1916, at *18-20 (noting that other circuits similarly prohibit a plaintiff from raising new claims in opposition to summary judgment and noting that district courts within the Fourth Circuit have adopted Gilmour).

B.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust all available administrative remedies before bringing a claim under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a). See Woodford v. Ngo, 548 U.S. 81, 85 (2006) (stating that "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory"); Porter v. Nussle, 534 U.S. 516, 532 (2002) (stating that the PLRA applies to "all inmate suits, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong"); Booth v. Churner, 532 U.S. 731, 739 (2001) (finding that the PLRA requires administrative exhaustion prior to the filing of a federal civil rights suit even if the form of relief the inmate seeks is not available through exhaustion of administrative remedies). Pursuant to the PLRA, prisoners must not just initiate timely grievances, but must also timely appeal through all levels of available administrative review any denial of relief. Woodford, 548 U.S. at 93 (holding that the PLRA requires "proper exhaustion" of institutional administrative remedies before filing any federal suit challenging prison conditions). To properly exhaust a claim, an inmate must file grievances with sufficient detail to alert prison officials of the possible constitutional claims which are now alleged as a basis for relief. See Smith v. Rodriguez, No. 7:06-cv-00521, 2007 U.S. Dist. LEXIS 43571, 2007 WL 1768705 (W.D. Va. June 15, 2007) (citing McGee v. Fed. Bureau of Prisons, 118 F. App'x 471, 476 (10th Cir. 2004)). Failure to exhaust is an affirmative defense that defendant has the burden of pleading and proving. Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 681 (4th Cir. 2005).

Defendants argue that plaintiff failed to exhaust his administrative remedies about the beatings and the restraint chair. However, plaintiff alleges that he was unable to file any

additional grievances because staff either refused to give him grievance forms or ripped them up so to preclude him from filing any grievances. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). Thus, "when prison officials prevent inmates from using the administrative process . . ., the process that exists on paper becomes unavailable in reality." Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006). See Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) (holding that district court erred in failing to consider prisoner's claim that he was unable to submit a grievance, and therefore lacked available administrative remedies, because prison employees refused to provide him with the necessary forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (stating administrative remedy rendered unavailable when prison officials prevent prisoner from using it). A district court is "obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." Aquilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007). See Kaba, 458 F.3d at 686 (finding affidavits of the prison officials and Kaba's other grievances and filings merely turn into a dispute with evidence, requiring the factfinder to evaluate the credibility of the witnesses and other evidence in the record); Lewis v. Washington, 300 F.3d 829, 831-32 (7th Cir. 2002) (deemed administrative remedies exhausted when prison officials failed to respond to inmate grievances because those remedies had become "unavailable"); Foulk v. Charrier, 262 F.3d 687, 698 (8th Cir. 2001) (same); Underwood v. Wilson, 151 F.3d 292, 295 (5th Cir. 1998). Given the particular perspectives required when considering a motion for summary judgment, I decline to dismiss plaintiff's claims based on unexhausted administrative remedies because plaintiff alleges that prison officials prevented him

from filing the necessary grievances.

C.  QUALIFIED IMMUNITY

Plaintiff names the defendants in their personal capacities, and the defendants assert the defense of qualified immunity. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Whether a defendant can claim qualified immunity is a pure question of law and is properly determined pretrial. Saucier v. Katz, 533 U.S. 194, 200-01 (2001) (modified by Pearson v. Callahan, 129 S. Ct. 808 (Jan. 21, 2009) (permitting lower courts the discretion to determine which qualified immunity prong to analyze first)).

Qualified immunity is an immunity from suit rather than a mere defense to liability. A plaintiff bears the burden to show that a defendant's conduct violated the plaintiff's right. Bryant v. Muth, 994 F.2d 1082, 1086 (4th Cir. 1993). However, a defendant must demonstrate that the right was not clearly established at the time of the incident to receive qualified immunity. Henry v. Purnell, 501 F.3d 374, 378 (4th Cir. 2007). "The unlawfulness of the action must be apparent when assessed from the perspective of an objectively reasonable official charged with knowledge of established law." Lopez v. Robinson, 914 F.2d 486, 489 (4th Cir. 1990). See Anderson v. Creighton, 483 U.S. 635, 640 (1987) ("This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent.").

A convict alleging excessive force must objectively show that a defendant "inflicted

unnecessary and wanton pain and suffering."[4] Whitley v. Albers, 475 U.S. 312, 320 (1986). See Wilson v. Seiter, 501 U.S. 294, 298 (1991) (holding that an Eighth Amendment claim for excessive force requires an objective deprivation of a basic human need and that prison officials subjectively acted with a sufficiently culpable state of mind). Therefore, the proper inquiry is whether the force applied was "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21. The inquiry requires evaluation of "whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). The subjective component encompasses "such factors as the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." Id. at 321 (internal quotation marks, alterations, and citation omitted). The objective element generally requires more than a de minimis use of force. Hudson v. McMillian, 503 U.S. 1, 9-10 (1992). See Wilkins v. Gaddy, ___ U.S. ___, 130 S. Ct. 1175 (Feb. 22, 2010) (stating that an inmate's extent of injury is a relevant factor to an Eighth Amendment claim).

    1.    The defendants are entitled to qualified immunity for plaintiff's claims about the use of the restraint chair.

Plaintiff fails to show that using the restraint chair violated the Eighth Amendment. Plaintiff admits that prior to being ordered into the restraint chair he defecated on his cell's food slot right after staff and inmates cleaned his cell. After staff moved plaintiff to a new, more

---

[4] The defendants explain that plaintiff was convicted and serving an imposed sentence at the time he was at the Jail for another unresolved charge.

11

restrictive cell, plaintiff admits that he banged on the cell's light fixture. After plaintiff committed these acts, staff moved him to the restraint chair. While in the restraint chair, plaintiff continued to engage in disruptive behavior by trying to tip the chair over and singing loudly during the time other inmates prepared to sleep. These undisputed facts evince plaintiff's continued placement in the restraint chair as a necessary, good-faith effort to restore and maintain discipline. Plaintiff's unruly behavior necessitated some response from staff to maintain order. See Whitley, 475 U.S. at 321-22 (stating courts should accord prison officials wide-ranging deference in the adoption and execution of policies and practices needed to preserve internal order, discipline, and security). The restraint chair was a minimal, increased step to secure plaintiff's compliance after already transferring him to a more restrictive cell and precluding the need to use chemicals or physical force. Moreover, medical staff monitored plaintiff, and he received water and bathroom breaks while in the restraint chair. Although the alleged injury from the lack of circulation was serious pain, discomfort from the restraint chair was prolonged by plaintiff's decision to try to tip the chair over and "act out" by singing "very loudly." Discomfort from being in a restraint chair for nineteen hours after plaintiff defecated in front of staff on the food slot in a newly cleaned cell, banged on a cell light, tried to tip over the restraint chair, and acted out by singing very loudly is not an unconstitutional condition of confinement. Cf. Beverati v. Smith, 120 F.3d 500, 503 (4th Cir. 1997) (holding that administrative segregation for six months with vermin; human waste; flooded toilet; unbearable heat; cold food; dirty clothing, linens, and bedding; longer periods in cell; no outside recreation; no educational or religious services; and less food was not so atypical as to impose significant hardship).

Clearly established law in this circuit during December 2007 required a plaintiff

experiencing actionable cruel and unusual punishment to suffer more than a de minimis injury or receive force "repugnant to the conscience of mankind." See Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994) (abrogated by Wilkins v. Gaddy, 130 S. Ct. 1175 (Feb. 22, 2010)). See also Hudson v. McMillian, 503 U.S. 1, 9-10 (1992). Plaintiff's placement in the restraint chair for nineteen hours is not a force repugnant to the conscience of mankind. See, e.g., Williams v. Burton, 943 F.2d 1572 (11th Cir. 1991) (keeping inmate in four-point restraints for 28 hours not a violation of the Eighth Amendment). Plaintiff does not specifically dispute defendant Watkins' and Young's averments that he received water and bathroom breaks while in the restraint chair. Furthermore, plaintiff did not experience anything more than a de minimis injury despite his allegation of "severe pain" from the reduced blood circulation.[5] The medical record shows that medical staff monitored plaintiff's circulation every thirty minutes between 2:20 p.m. and 10:20 p.m., and he did not complain about his restraints, circulation, or pain beyond back discomfort. Even during the night-shift before medical monitoring stopped, plaintiff does not allege he told anyone about the "severe pain" despite his ability to sing "very loudly." The alleged discomfort caused by the lack of circulation in his legs was temporary and a de minimis result. Accordingly, the defendants are entitled to qualified immunity because plaintiff fails to establish a constitutional violation and the unlawfulness of using the restraint chair was not objectively apparent at that time.

---

[5] Plaintiff's allegation that he suffered circulatory damage as a result of the restraint chair because his blood pressure dropped while meeting medical staff is contradicted by his own March 2008 medical slip where he writes he experiences low blood pressure because he does not drink enough fluids because of jaw pain caused by the TMJ disorder. (Def.s' Ex. 5a (no. 38-5).)

2. The defendants are entitled to qualified immunity for plaintiff's claims about harassment, threats, or name-calling.

When a defendant makes comments that may constitute verbal abuse or harassment, those comments alone do not rise to the level of an Eighth Amendment violation. See Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979), cited favorably in, Moody v. Grove, 885 F.2d 865 (4th Cir. 1989) (table) (unpublished) (stating as a general rule that verbal abuse of inmates by guards, without more, does not state a constitutional claim); Morrison v. Martin, 755 F.Supp. 683, 687 (E.D. N.C. 1990) (same). The Constitution does not "protect against all intrusions on one's peace of mind." Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir. 1991). Verbal harassment or idle threats to an inmate, even to an extent that it causes an inmate fear or emotional anxiety, do not constitute an invasion of any identified liberty interest. Emmons v. McLaughlin, 874 F.2d 351, 354 (6th Cir. 1989) (stating verbal threats causing fear for plaintiff's life not an infringement of a constitutional right); Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985) (calling an inmate an obscene name did not violate constitutional rights); Lamar v. Steele, 698 F.2d 1286 (5th Cir. 1983) ("Threats alone are not enough. A [§]1983 claim only accrues when the threats or threatening conduct result in a constitutional deprivation."); Keyes v. City of Albany, 594 F. Supp. 1147 (N.D.N.Y. 1984) ("[T]he use of vile and abusive language [including racial epithets], no matter how abhorrent or reprehensible, cannot form the basis for a § 1983 claim."). The law is clear that mere "threatening language and gestures of [a] penal officer do not, even if true, constitute constitutional violations." Fisher v. Woodson, 373 F. Supp. 970, 973 (E.D. Va. 1973). Accordingly, plaintiff fails to establish that a defendant violated a constitutional right by harassing, threatening, or ridiculing him, and the defendants are entitled to qualified immunity

for this claim.

3. Sheriff Johnson is entitled to qualified immunity.

Sheriff Johnson is also entitled to qualified immunity because plaintiff fails to establish she violated one of plaintiff's constitutional rights. Supervisory liability under § 1983 may not be predicated only on the theory of respondeat superior. See Vinnedge v. Gibbs, 550 F.2d 926, 929 (4th Cir. 1977). Section 1983 requires a showing of personal fault on the part of a defendant either based on the defendant's personal conduct or another's conduct in execution of the defendant's policies or customs. See Fisher v. Washington Metropolitan Area Transit Author., 690 F.2d 1133, 1142-43 (4th Cir. 1982), abrogated on other grounds by Cnty. of Riverside v. McLaughlin, 500 U.S. 44 (1991). Plaintiff's conclusory allegation that Johnson promulgated policies to use the restraint chair as a torture device is specious and lacks a scintilla of evidence. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (stating a complaint needs "a short and plain statement of the claim showing that the pleader is entitled to relief" and sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level . . . ." ).

Plaintiff's alternative allegation that the restraint chair was not used in compliance with "norms and rules" also affords no Eighth Amendment relief because a claim that Jail officials have not followed their own policies or procedures also does not amount to a constitutional violation. See United States v. Caceres, 440 U.S. 741 (1978); Riccio v. Cnty. of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir. 1990) (holding that if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue). Jail staff's alleged negligence in strapping plaintiff into the restraint also does not state a constitutional claim. See Davidson v. Cannon, 474 U.S. 344 (1986) (mere negligent failure to

protect inmate does not deprive liberty nor violate the Fourteenth Amendment); Whitley, 475 U.S. at 319 ("obduracy and wantonness, not inadvertence . . . characterize the conduct prohibited by [the Eighth Amendment]. . . ."). Even if Johnston prohibited plaintiff from filing grievances, plaintiff does not have a constitutional right to access a grievance system. Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). Accordingly, plaintiff fails to establish that Sheriff Johnson violated one of his constitutional rights, and she is entitled to qualified immunity.

D. YOUNG IS ENTITLED TO SUMMARY JUDGMENT BECAUSE NO REASONABLE TRIER OF FACT COULD RULE IN PLAINTIFF'S FAVOR.

Plaintiff alleges that, while he was still in the restraint chair, Young and another deputy pummeled his head and face for more than six minutes on two separate occasions.[6] Young avers that neither he nor anyone else struck plaintiff.

I am mindful that I may not resolve disputed facts, weigh evidence, or determine credibility. Although both plaintiff and defendants tell two opposed versions of what happened while plaintiff was in the restraint chair, the medical record undermines plaintiff's claims to such extent that no reasonable jury could believe his version of events. See, e.g., Preast v. McGill, 65 F. Supp. 2d 395, 407 (S.D. W.Va. 1999) (stating a plaintiff's unsubstantiated claims of permanent injury caused by any alleged use of force are entitled to little weight when the plaintiff cannot point to evidence of a visible injury at the time of the incident or medical evidence of serious lasting injuries). Plaintiff alleges that the two rounds of beatings occurred shortly after both 6:00 and 7:00 p.m. As reflected on the medical record, a nurse checked plaintiff at 6:20, 6:50, 7:20, 7:50, 8:20, 8:50, 9:20, 9:50, and 10:20 p.m. and recorded at each time that there was no distress

---

[6] Because plaintiff's accusation states an Eighth Amendment claim of excessive force, which was clearly established by the time of the events, Young is not entitled to qualified immunity.

and no problem with plaintiff's "skin or circulation." The nurse noted "no complaints" at the 7:50 check, despite plaintiff's described two savage beatings. Plaintiff does not argue that the medical record is not authentic or that the numerous nursing entries are different than what transpired when the nurses checked him.[7]

According to plaintiff, the punches were so constant, brutal, and recurring to cause him "massive nerve" problems, "visible bruising about the face and eyes," and permanent eye damage. The documents he cites to support his claim of nerve damage discusses slight swelling of his hands thirty-minutes before his release from the restraint chair and a three-week old stomach pain he reported three days after the alleged beating.[8] However, plaintiff complained to Jail medical staff of eye pain and pain in the back of his head as early as October 2006. While I accept plaintiff's versions of facts as true when resolving defendants' motion for summary judgment, I find that no reasonable trier of fact can find in plaintiff's favor concerning Young's alleged excessive force when viewing his claims against the record. Accordingly, Young is entitled to summary judgment.

III.

For the foregoing reasons, I grant the defendants' motion for summary judgment and deny as moot plaintiff's motion for a hearing and motion for a copy of the Local Rules.

The Clerk is directed to send copies of this memorandum opinion and the accompanying

---

[7] Plaintiff merely alleges he told the nurse at the last check at 10:20 p.m. that deputies beat him but that the nurse disregarded his statement.

[8] As previously discussed, plaintiff's jaw pain and low blood pressure relate to conditions not connected to the alleged beating.

order to plaintiff and counsel of record for the defendants.

**ENTER**: This 4th day of August, 2011.

                                                                                       Senior United States District Judge